| | |
|---|---|
| John S. Persell (OSB # 084400)<br>Oregon Wild<br>5825 N Greeley Avenue<br>Portland, OR 97217<br>Tel: (503) 896-6472<br>jp@oregonwild.org | Todd Kim<br>Assistant Attorney General<br>U.S. Department of Justice<br>Environment and Natural Resources Division<br>Krystal-Rose Perez (TX Bar # 24105931)<br>Trial Attorney<br>Natural Resources Section |
| Meriel L. Darzen (OSB # 113645)<br>Crag Law Center<br>3141 E Burnside Street<br>Portland, OR 97214<br>Tel: (503) 525-2725<br>Fax: (503) 296-5454<br>meriel@crag.org<br>*Attorneys for Plaintiff* | 150 M Street NE<br>Washington, DC 20002<br>Tel: (202) 305-0486<br>krystal-rose.perez@usdoj.gov<br><br>*Attorney for Federal Defendant* |

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| OREGON WILD,<br><br>    *Plaintiff*,<br><br>    v.<br><br>UNITED STATES FOREST SERVICE,<br><br>    *Defendant*. | Case No. 3:23-cv-935<br><br>**SETTLEMENT AGREEMENT** |

This Settlement Agreement is entered into by and between Plaintiff Oregon Wild and Defendant U.S. Forest Service (collectively, "the Parties"), who state as follows:

WHEREAS, the Forest Service authorized the Grasshopper Restoration Project in the Barlow Ranger District on the Mt. Hood National Forest through its January 11, 2023 Decision

Notice and Finding of No Significant Impact (FONSI), which included authorization of commercial timber harvest treatments in certain harvest units;

WHEREAS, the Forest Service will impose unit prescription diameter limits on any timber harvest treatments authorized under the Grasshopper Project and memorialize those diameter limits in prescription specifications provided to the contractor(s) undertaking timber harvest;

WHEREAS, the Forest Service has determined that the unit prescription diameter limits specific to the Grasshopper Project should include a 24" Diameter at Breast Height (DBH) limit in the moist mixed units and 22" DBH in the dry mixed units for ponderosa pine, western white pine, and western larch; a 28" DBH limit for Douglas fir in the moist mixed units; a 26" DBH limit for Douglas fir in the dry mixed units; and in both moist and dry mixed units a 28" DBH limit for all other tree species;

WHEREAS, the Forest Service has not authorized any Cedar or Pacific yew species to be cut under the Grasshopper Project;

WHEREAS, the Forest Service has not authorized any Oak species to be cut in the dry mixed units under the Grasshopper Project;

WHEREAS, Plaintiff filed its "Complaint for Declaratory and Injunctive Relief," ECF No. 1, on June 27, 2023, and its "First Amended Complaint for Declaratory and Injunctive Relief," ECF No. 12, on October 31, 2023;

WHEREAS, Plaintiff's Amended Complaint alleges that the Forest Service violated the National Environmental Policy Act (NEPA) 42 U.S.C. §§ 4321 et seq. and its implementing regulations by (a) failing to prepare an Environmental Impact Statement (EIS) for the Grasshopper Project, and (b) failing to take a "hard look" at the Project's environmental impacts.

WHEREAS, Defendant filed its response to Plaintiff's Amended Complaint on November 27, 2023, ECF No. 13, denying Plaintiff's allegations;

WHEREAS, in February 2024, the Parties began negotiating a settlement to resolve Plaintiff's claims;

WHEREAS, on May 14, 2024, the Parties filed a Motion to Stay proceedings to continue settlement negotiations to resolve the case without further Court involvement and any other litigation;

WHEREAS, on May 15, 2024, the Court granted the Parties' Joint Motion to Stay proceedings pending settlement discussions, ECF No. 27;

WHEREAS, the Parties, through their authorized representatives, have reached a settlement that they believe is in the public interest and consider to be a just, fair, adequate, and equitable resolution of the claims set forth in Plaintiff's Amended Complaint;

THEREFORE, Plaintiff and Defendant agree to the following:

1. The Forest Service agrees to withdraw Units 161 and 204 from the Grasshopper Project.

2. The Forest Service agrees to reduce treatment intensity as follows:

    a. For Unit 7, the Forest Service agrees to reduce the basal area treatment intensity to a unit range of 80 to 100 square feet.

    b. For Units 168, 186, and 203L, the Forest Service agrees to reduce the basal area treatment intensity to a unit range of 100 to 150 square feet.

3. The Forest Service agrees that contracts to implement the Grasshopper Project will impose unit prescription diameter limits as follows: a 24" DBH limit in the moist mixed units and 22" DBH in the dry mixed units for ponderosa pine, western white pine, and western

larch; a 28" DBH limit for Douglas fir in the moist mixed units; a 26" DBH limit for Douglas fir in the dry mixed units; and in both moist mixed and dry mixed units a 28" DBH limit for all other tree species.

4.      The Forest Service agrees that contracts to implement the Grasshopper Project will impose unit prescriptions to leave Cedar and Pacific yew species in both moist mixed and dry mixed units and leave Oak species in dry mixed units.

5.      The Forest Service agrees that contracts to implement the Grasshopper Project will require that any trees, which exceed the above diameter limits or leave prescriptions, that are felled for operational reasons must remain in the unit unless otherwise agreed to in writing by the Forest Service.

6.      The Forest Service agrees to take up to six representatives of Oregon Wild on one guided field trip, conditions permitting, to inspect pre-implementation conditions of no more than four units as numbered in the EA and mutually agreed upon by the Parties.  The Forest Service agrees to take up to six representatives of Oregon Wild on no more than two guided field trips to reinspect conditions in the same units post-implementation.  Pursuant to Forest Service regulations and to ensure safety of visitors, a site visit agenda should be developed in cooperation with the Forest Service in advance of all site visits.  Plaintiff recognizes that the Forest Service does not control the implementation timing beyond awarding contracts.

7.      The Forest Service may continue with all other planned activities authorized under the Grasshopper Project.

8.      Nothing in this Settlement Agreement prohibits the Forest Service from undertaking new projects or agency actions within the original project areas.

9. Nothing in this Settlement Agreement prohibits Plaintiff from filing future lawsuits against Defendant to challenge any future final agency actions undertaken by Defendant.

10. Subject to Paragraph 11 below, the Parties agree to settle Plaintiff's claim to attorneys' fees and costs in this litigation for a total payment of $55,000, pursuant to the Equal Access to Justice Act, 5 U.S.C. § 2412 *et seq.* or any other statute, in full and complete satisfaction of any and all claims, demands, rights, and causes of action Plaintiff may have for the recovery of attorneys' fees or litigation costs in this matter. Provided, however, that Plaintiff is not barred by this or any other provision of this Agreement from seeking attorneys' fees and costs incurred to enforce the terms of this Agreement, subject, however, to all available defenses.

11. Defendant's payment, as identified in Paragraph 10 above, shall be accomplished by electronic funds transfer to Crag Law Center's IOLTA account on behalf of Plaintiff. Counsel for Plaintiff will provide counsel for Defendant the appropriate account number and other information needed to facilitate payment. Defendant shall submit the necessary paperwork for the payment within 30 days after issuance of the Order described in Paragraph 15 below and Plaintiff provides the information necessary to facilitate payment. Counsel for Defendant agrees to assist counsel for Plaintiff in following up with the appropriate office(s) if payment is not received within 30 calendar days after the paperwork for processing of the payment has been submitted.

12. Plaintiff warrants and represents that no other action or suit respecting the claims in this matter is pending or will be filed in or submitted to any other court, administrative agency, or legislative body.

13. Crag Law Center acknowledges that it is receiving payment on behalf of Plaintiff and that Crag Law Center will distribute the appropriate settlement proceeds to Plaintiff. Plaintiff agrees to this procedure. Counsel for Plaintiff shall confirm payment within 10 days of receipt. Plaintiff also acknowledges that under 31 U.S.C. §§ 3711, 3716, 26 U.S.C. § 6402(d), 31 C.F.R. §§ 285.5, 901.3, and other authorities, the United States will offset against the award of attorneys' fees and costs Plaintiff's delinquent debts to the United States, if any. *See Astrue v. Ratliff*, 560 U.S. 586 (2010).

14. Once Plaintiff has confirmed receipt of payment, Plaintiff and its attorneys agree to hold harmless Defendant in any litigation, further suit, or claim arising from the payment of the agreed upon settlement amount set forth in Paragraph 10 above.

15. The Parties stipulate and agree, and hereby request, that the Court enter the accompanying proposed order dismissing this action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2), and retaining jurisdiction over this matter solely to oversee compliance with the terms of this Settlement Agreement. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994).

16. The terms of this Agreement shall become effective upon entry of the proposed order described in Paragraph 15. Any dispute over compliance with any provision of this Settlement Agreement shall proceed as set forth in Paragraph 17.

17. In the event that a party believes another party to be in breach of this agreement, such party must give notice to the other party at the earliest possible date. Notice from Plaintiff should be provided to the U.S. Forest Service and to undersigned counsel for Defendant. No party shall seek action by a court regarding the alleged breach until after 14 days have passed since providing notice, during which time the Parties agree that they will meet and confer

(telephonically or in-person) at the earliest possible time in a good-faith effort to resolve the claim before seeking relief from a court. The Parties agree that neither will seek contempt of court as a remedy for any violation of this Settlement Agreement, and the Parties therefore knowingly waive any right that they might have to seek an order for contempt for any such violation.

18. This Agreement constitutes the complete and final resolution of all legal, equitable, and administrative claims arising out of the Decision Notice, FONSI, and approval of the Grasshopper Project. In acknowledgement of and in exchange for the promises and other consideration contained in this Agreement and the payment by Defendant to Plaintiff referenced in Paragraph 10 above, Plaintiff and its respective affiliates, successors, and assigns hereby unconditionally and irrevocably release, waive, covenant not to sue, and forever discharge Defendant (including its past, present, and future officers, agents, and affiliates) from any and all claims, causes of action, allegations, demands, suits, judgments, liabilities, fees, interests, or obligations, whether known or unknown, foreseen or unforeseen, disclosed or undisclosed, presently asserted or otherwise, based on the same transactions or occurrences that are set forth in the Complaint, ECF No. 1.

19. This Agreement does not constitute, and shall not be construed as, an admission or concession on the part of any party with respect to any fact, claim, or defense in this action. This Agreement shall have no precedential value and will not be used as evidence of such in any pending or future civil or administrative action against Defendant, or the United States, or any agency or instrumentality of the United States. Defendant does not waive any defenses it may have concerning the claims settled under this Agreement.

20.     No provision of this Agreement shall be interpreted as, or constitute, a commitment or requirement that Defendant is obligated to spend funds in violation of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other law or regulation.

21.     The Agreement contains all of the agreements between Plaintiff and Defendant and is intended to be the final and sole agreement between them.  The Parties agree that any prior or contemporaneous representations or understanding not explicitly contained in this written Agreement, whether written or oral, are of no further legal or equitable force or effect.

22.     The undersigned representatives of each party certify that they are fully authorized by the Parties they represent to agree to the terms and conditions of this Agreement and do hereby agree to the terms herein.


Respectfully submitted this 13th day of January 2025,

| | |
|---|---|
| */s/ John S.Persell*<br>John S. Persell<br>Oregon Wild<br>5825 N Greeley Ave<br>Portland, OR 97217<br>(503) 896-6472<br>jp@oregonwild.org<br><br>Meriel Darzen<br>Crag Law Center<br>3141 E Burnside St<br>Portland, OR 97214<br>(503) 525-2725<br>meriel@crag.org<br><br>*Attorneys for Plaintiff* | Todd Kim, Assistant Attorney General<br>U.S. Department of Justice<br>Environment and Natural Resources Division<br><br>*/s/ Krystal-Rose Perez*<br>Krystal-Rose Perez, Trial Attorney<br>Natural Resources Section<br>150 M Street, NE<br>Washington, DC 20002<br>(202) 305-0486<br>krystal-rose.perez@usdoj.gov<br><br>*Attorney for Defendant* |